IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| SHALAMAR D. FITZGERALD, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:16cv00525 |
| | ) | |
| v. | ) | |
| | ) | |
| CHANDRAKANT PATEL, M.D., | ) | By: Elizabeth K. Dillon |
|     Defendant. | ) | United States District Judge |

**MEMORANDUM OPINION**

Shalamar D. Fitzgerald, a Virginia inmate proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendant, Dr. Chandrakant Patel, denied him mental health treatment. Dr. Patel filed a motion to dismiss, and Fitzgerald responded, making this matter ripe for disposition. Having considered the record, the court will grant defendant's motion.

I. BACKGROUND

On May 15, 2015, while housed at Green Rock Correctional Center, Fitzgerald went to the treatment building to meet with Dr. Patel to discuss his "possible needs to start or continue psychiatric medication" and to "discuss how such medication might effect" him. The medical records that Fitzgerald attached to his complaint show that he was previously diagnosed with "depressive disorder unspecified," and at the time of the appointment he was already taking citalopram[1]. At the appointment, Dr. Patel continued Fitzgerald on citalopram and also prescribed trazodone,[2] and Fitzgerald consented to treatment with these medications. Fitzgerald alleges, however, that Dr. Patel failed to check the Federal Drug Administration's (FDA) "safety

---

[1] Citalopram is used to treat depression. Drugs.com, *Citalopram*, https://www.drugs.com/citalopram.html (last visited Sept. 1, 2017). The court notes that at some points in the record, this drug is referred to as Celexa. Celexa is the brand name for the generic drug citalopram. Drugs.com, *Celexa*, https://www.drugs.com/celexa.html (last visited Sept. 1, 2017).

[2] Trazodone is used to treat major depressive disorder. Drugs.com, *Trazodone*, https://www.drugs.com/trazodone.html (last visited Sept. 1, 2017).

information alert" which indicated that the two medications had "a reaction to each other." On May 16, 2015, Dr. Patel noted in the medical records that he had received a pharmacy alert regarding cardiac induction on a combination of citalopram and trazodone. He also noted that he would discontinue citalopram "in favor of" trazodone and would "review choices" with Fitzgerald in about one month. Fitzgerald did not take the combination of medications before the citalopram was discontinued. (Compl. 4-5, Dkt. No. 1; Compl. Attach. 2.)

When Fitzgerald went to his appointment with Dr. Patel on June 13, 2015, he was "worked up and a little angry about the FDA alert." Dr. Patel offered him alternative medications to replace the citalopram. Dr. Patel's notes in the medical records attached to the complaint indicate that Fitzgerald agreed to take Prozac, "but [he] wanted to know 'everything' about it." Although Fitzgerald signed the consent form for receiving Prozac with the trazodone, he wrote on the form that he "was not given a chance to decide what's best for [him and he] was told [to] pick something because [he had] to go." Dr. Patel noted that he took Fitzgerald's comments to mean that Fitzgerald was "effectively rescinding [his] consent." Accordingly, Dr. Patel did not prescribe the Prozac, and Fitzgerald continued on the trazodone until his next appointment. (*Id.*)

Fitzgerald requested a mental health assessment and was evaluated by a psychology associate on July 14, 2015. During the assessment, the psychology associate informed Fitzgerald that a screening he had undergone two weeks prior suggested that he had "mild depression." The plan indicated that mental health services would be provided as needed. (*Id.*)

On July 17, 2015, at his monthly appointment with Dr. Patel, Fitzgerald and Dr. Patel discussed the "effects" that Fitzgerald had been experiencing and the "changes" he had been going through since his citalopram had been discontinued. Ultimately, they agreed that

Fitzgerald should take Prozac with the trazodone, and Fitzgerald consented to treatment with those medications. (*Id.*)

II. DISCUSSION

**A. Motion to Dismiss Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the

3

court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (citation omitted). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009) (*quoting Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978)). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) (*quoting Sado v. Leland Mem'l Hospital*, 933 F. Supp. 490, 493 (D. Md. 1996)).

**B. Denial of medical care**

Fitzgerald alleges that Dr. Patel was deliberately indifferent to his serious mental health needs and that Dr. Patel violated Fitzgerald's constitutional rights by prescribing the two medications without first reviewing the FDA alert and by denying him medication for two months. The court finds that Fitzgerald's allegations are insufficient to rise to the level of a constitutional claim and, therefore, will grant Dr. Patel's motion to dismiss.

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that jail officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Staples v. Va. Dep't of Corr.*, 904 F.Supp. 487, 492 (E.D.Va. 1995). A prison official is "deliberately indifferent" only if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

4

A delay in medical treatment may constitute deliberate indifference. *See Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009) (citing *Estelle*, 429 U.S. at 104-05). In such cases, in addition to establishing that his medical need was objectively serious, a plaintiff also must show that the delay in providing medical care caused him to suffer "substantial harm." *See Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008); *Shabazz v. Prison Health Servs.*, No. 3:10cv190, 2011 U.S. Dist. LEXIS 88124, at *18-19, 2011 WL 2489661, at *6 (E.D. Va. Aug. 9, 2011). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Shabazz*, 2011 U.S. Dist. LEXIS 88124, at *19, 2011 WL 2489661, at *6; *see also*, *Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995); *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995), *abrogated on other grounds by Reece v. Groose*, 60 F.3d 487 (8th Cir. 1995); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993).

An "error of judgment" on the part of prison medical staff or "inadvertent failure to provide adequate medical care," while perhaps sufficient to support an action for malpractice, does not constitute a constitutional deprivation redressable under § 1983. *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989). Mere negligence does not constitute deliberate indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists and must draw the inference. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *see also Farmer*, 511 U.S. at 837. The prison official's conduct must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Militier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

Fitzgerald was seen by Dr. Patel monthly, and at each appointment, Dr. Patel assessed Fitzgerald's mental health status. With regard to Dr. Patel's prescription for two medications

5

that had an FDA warning against their combination, Fitzgerald's allegations show negligence at most, which is not actionable under § 1983. Nothing in Fitzgerald's complaint or the attachments thereto suggests that Dr. Patel knew of and disregarded an excessive risk to Fitzgerald's health or safety when he prescribed the two medications.

With regard to Fitzgerald not receiving a replacement medication for the citalopram for two months, Fitzgerald has again failed to allege sufficiently that Dr. Patel acted with deliberate indifference. Dr. Patel made the decision to discontinue the citalopram in favor of the trazodone when he discovered the FDA alert. He also made the decision that he would review new choices with Fitzgerald in a month. A month later, when Dr. Patel and Fitzgerald met, Fitzgerald refused to give his unqualified consent to receiving Prozac with the trazodone. Accordingly, Dr. Patel did not prescribe the Prozac. Nothing in Fitzgerald's complaint or the attachments thereto suggests that Dr. Patel knew of and disregarded an excessive risk to Fitzgerald's health or safety when he decided to discontinue the citalopram in favor of the trazodone, wait a month after canceling the citalopram to discuss the options with Fitzgerald, or refusing to accept his qualified consent to receiving a combination of Prozac and trazodone. Moreover, Fitzgerald has not sufficiently alleged that the delay in receiving the second medication caused him to suffer "substantial harm." At most, Fitzgerald has alleged a doctor patient disagreement, which is not actionable under § 1983.

### III. CONCLUSION

For the reasons stated herein, the court will grant Dr. Patel's motion to dismiss.

An appropriate order will be entered.

Entered: September 11, 2017.

/s/ *Elizabeth K. Dillon*
        Elizabeth K. Dillon
        United States District Judge